In re YUBA WESTGOLD, INC., a/k/a Yuba Natural Resources, Inc., Debtor.

**Bankruptcy No. 92–51643XS.**

United States Bankruptcy Court, N.D. Iowa, W.D.

June 7, 1993.

---

1. The debtors also made allegations of other sale irregularities.

A. Frank Baron, Sioux City, IA, for debtor.

Robert J. Parks, Russell S. Schwartzman, San Diego, CA and Timothy V. Haight, Thomas O. Ashby, Omaha, NE, for Western Water Co.

Daniel Rumsey, Terra Industries, Inc., Sioux City, IA, for Terra Industries.

## ORDER RE: MOTION TO APPROVE ADMINISTRATIVE SERVICES AGREEMENT

WILLIAM L. EDMONDS, Chief Judge.

The matter before the court is the debtor's amended motion seeking approval of a Management Services Agreement entered into between the debtor and Terra Industries, Inc. (TERRA). Western Water Company (WESTERN WATER) objects to the motion. Hearing was held on May 25, 1993, in Sioux City.

Yuba WestGold, Inc.'s first effort to obtain approval of a management agreement with Terra was not approved because the court considered vague the explanation of the services to be provided. Debtor filed an amended motion on April 16, 1993, and served it on various parties as required by the court's order of April 22. (Docket no. 146).

Appearing at the hearing in support of the amended motion were A. Frank Baron, debtor's counsel; Daniel W. Rumsey, Assistant General Counsel for Terra; Jeffrey R. Mohrhauser, counsel for the Unsecured Creditors Committee; Lawrence D. Kudej, Assistant United States Attorney, representing the Bureau of Land Management; and Timothy V. Haight, counsel for Western Water. All appearing parties, except Western Water, support the motion. Also supporting the motion are the United States Trustee (see "Comments" filed at docket no. 151), and Western Aggregates, Inc., a major unsecured creditor.

The supporters of the motion say that the approval of the agreement would be in the best interest of the estate because it represents the most economical method of obtaining necessary services for the debtor. Western Water contends that the services involved include professional services which are needed by the debtor, not for ordinary operations, but for purposes central to the reorganization process. And, because Terra is not a disinterested party, Western Water says that employment to provide such services cannot be approved.

Terra has a dual relationship with the debtor. The first aspect of the relationship is succinctly described in the Agreement (Motion, Exhibit A, p. 1):

> Terra owns one hundred percent (100%) of the capital stock of Inspiration Gold Incorporated which is a general partner of, and owns fifty percent (50%) of, Western Gold Exploration and Mining Company, Limited Partnership. Western Gold Exploration and Mining Company, Limited Partnership owns approximately seventy percent (70%) of Yuba....

Terra is also an unsecured creditor making a substantial claim against the debtor.

The services contemplated by the agreement fall into the following categories:

(1) employee related services: pension plan administration services, employee benefit services, the administration of severance pay obligations.

(2) accounting.

(3) management: supervision of consultants, supervision of Terra employees providing non-management services to the debtor, assistant bankruptcy counsel for the debtor, addressing issues arising out of the § 363 purchase agreement, preparation of required SEC filings, advice to the debtor regarding SEC obligations of the debtor, management of the estate remaining assets, and other activities regarding the day-to-day management of the debtor's affairs.

(4) administrative support: filing, copying, word processing, mailing and similar support functions.

Among the Terra employees who would provide professional services to the debtor is Daniel W. Rumsey, Terra's Assistant General Counsel.

Debtor and its wholly owned subsidiary, Westgold Placer, Inc. (PLACER) were partners in a joint venture known as Yuba Placer Gold Company (the JOINT VENTURE). Placer was the managing partner and owned a two-thirds interest in the joint venture. Yuba Westgold, the debtor, owned a one-third interest in the joint venture. Prior to the debtor's bankruptcy filing, the joint venture was in the business of dredging for gold in California. The joint venture had its own employees for doing the dredging work and for performing accounting and administrative tasks. Placer supplied the joint venture with management services including supervision and accounting. Officers of Terra, who were also officers of debtor, provided senior management to the operations of the debtor and thus to the joint venture which was the operational arm of the gold dredging business. These officers of the debtor were: Blare Howkins, President; Burton Joyce, Senior Vice President; Ben Keisler, Vice President; Mark Rosenbury, Chief Financial Officer. According to the court's understanding of Rumsey's testimony, senior management services were provided to the operation "indirectly" through Terra because the debtor's officers were also officers of Terra. There were other officers of the debtor who performed day-to-day functions for the debtor. One such was Bill Brooks, Vice President of Operations. There is no evidence as to whether Brooks is or was an officer of Terra.

The personnel picture for the debtor and its affiliates changed after the sale in December, 1992, of substantially all of the assets of debtor, Placer and Joint Venture. After sale, all employees of the three were terminated; none has regular, full-time employees. The court presumes from the evidence that the debtor's board of directors and at least some of their officers remain as officers and/or directors. According to Rumsey, the debtor's board of directors continues to make corporate decisions.

Pursuant to the proposed agreement, Terra would supply the described services at the rate of $75.00 per hour, with a monthly cap of fees on $1,000.00. The hourly rate was determined by a rough blending of the relative value of time for professional, management and support employees of Terra. Terra's out-of-pocket expenses would be separately reimbursed. The agreement, if approved, would be executed on behalf of debtor by its Vice President and Secretary Ben L. Keisler and on behalf of Terra by its Vice President and Secretary Ben L. Keisler.

*DISCUSSION*

■ Debtor seeks approval of the employment of TERRA as a professional person under 11 U.S.C. § 327(a). Not all professionals which might be hired by a debtor-in-possession come within the purview of § 327(a). Professionals that do are those which play an "intimate role in the reorganization of the debtor's estate." *In re Sky Valley Inc.*, 135 B.R. 925, 936 (Bankr. N.D.Ga.1992); *In re United Color Press, Inc.*, 129 B.R. 143, 145 (Bankr.S.D.Ohio 1991); *In re Johns–Manville Corp.*, 60 B.R. 612, 619 (Bankr.S.D.N.Y.1986). Daniel Rumsey, General Counsel for Terra, concedes that 95 per cent of the services which Terra would provide are centrally related to the bankruptcy. The remaining services are clerical in nature.

■ Pursuant to 11 U.S.C. §§ 327(a) and 1107(a), the debtor-in-possession may employ professionals so long as those professionals are disinterested persons who do not hold an interest adverse to the estate. 11 U.S.C. § 327(a). A "disinterested person" is defined in 11 U.S.C. § 101(14). Terra is not a disinterested person because it is both a creditor and an insider. 11 U.S.C. § 101(14)(A). Terra's status as an insider derives from its position as an "affiliate" of the debtor, 11 U.S.C. §§ 101(31)(E), 101(2)(A). Terra might also be considered a person in control of the debtor. 11 U.S.C. § 101(31)(B)(iii). The Court of Appeals for the Eighth Circuit has generally upheld a strict interpretation of the standards for employing professionals despite the fact that such an interpretation might make it more difficult to retain professionals. *Merrimac Associates, Inc. v. Daig Corp. (In re Daig Corp.)*, 799 F.2d 1251, 1253 (8th Cir.1986); *In re Pierce*, 809 F.2d 1356, 1362–63 (8th Cir.1987).

■ Terra's status precludes it from employment as the debtor's bankruptcy manager, unless an exception to the statutory prohibition is provided by the Code. The court will not construe § 327(b) so liberally so as to consider Terra as a salaried replacement for formerly salaried professional employees. In the court's view, the exception of § 327(b) permits the debtor to retain "in-house" professionals and to replace them with "in-house" professionals; it does not permit the debtor-in-possession to replace "in-house" professionals with independent contractor professionals unless it has court approval. To get such approval, the "outside" professional must meet the requirements of § 327(a) or be excepted from them.

It appears to the court that the only possible exception for Terra is provided by § 1107(b) which states:

> Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

11 U.S.C. § 1107(b).

■ This section would permit the debtor-in-possession to employ professionals who would otherwise be disqualified because of their prior employment by the debtor. The section "does not apply to all interested persons, but only to those who fail to be disinterested solely because of prior employment." *Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. Partnership)*, 934 F.2d 723, 725 (6th Cir.1991); *In re Lakeside I Corp.*, 120 B.R. 231, 233 (Bankr.M.D.Fla.1990); *In re Leisure Dynamics, Inc.*, 32 B.R. 751, supplemented at 32 B.R. 753, 755 (Bankr.D.Minn. 1983); *aff'd*, 33 B.R. 121 (D.Minn.1983).

Section 1107(b) does not provide an exception to the disinterested requirement to permit employment of insider affiliates. The court can find no exception for this disqualification which would permit Terra to provide the debtor with professional services under the management agreement. Accordingly, the application must be denied. This does not deprive the debtor of management skills, as the debtor would presumably be able to retain its officers and directors to run the company.

IT IS ORDERED that the debtor's Motion to Employ Terra Industries, Inc. under the proposed Management Services Agree-

ment is denied. Judgment shall enter accordingly.

SO ORDERED.