In re MICHIGAN GENERAL
CORPORATION, Debtor.

In re MICHIGAN GENERAL
INVESTMENT COMPANY,
INC., Debtor.

In re DIAMOND LUMBER,
INC., Debtor.

In re KRESTMARK, INC., Formerly
Krestmark of Alabama,
Inc., Debtor.

In re KRESTMARK INDUSTRIES,
INC., Debtor.

In re EASTERN BUILDING SUPPLY
COMPANY, INC., Debtor.

Bankruptcy Nos. 387–32191–A–11, 387–
32270–A–11, 387–32190–A–11, 387–
32536–A–11, 387–32535–A–11 and 387–
32537–A–11.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Sept. 16, 1987.

Vernon O. Teofan, Freytag, Perry, La-Force, Rubinstein & Teofan, Dallas, Tex., for Unsecured Creditors' Committee for Diamond Lumber.

George McElreath, Asst. U.S. trustee, N.D. Tex., Dallas, Tex.

Dean M. Gandy, Akin, Gump, Strauss, Hauer, & Feld, Dallas, Tex., for debtors.

John Flowers, Locke, Purnell, Boren, Laney & Neeley, Dallas, Tex., for Republicbank Dallas, Indenture trustee.

Michael A. McConnel, Kelly, Appleman, Hart & Hallman, Ft. Worth, Tex., for Creditors' Committee for Krestmark Industries, Inc.

Robert Jones, Thompson & Knight, Dallas, Tex., for Arthur Andersen & Co.

## MEMORANDUM OPINION ON MOTION FOR REHEARING

HAROLD C. ABRAMSON, Bankruptcy Judge.

Former counsel for the Debtors, Akin, Gump, Strauss, Hauer & Feld ("Akin, Gump"), has petitioned for a rehearing on this Court's Opinion of June 23, 1987, as revised September 16, 1987, 77 B.R. 97. In that Opinion, Akin, Gump was disqualified as counsel for the various Debtors. In consideration of this motion for rehearing, the Court ordered the preparation of additional memoranda and accepted affidavit testimony. This Court has undertaken consideration of the submitted materials, review of the record in the original proceeding, and an exhaustive analysis of the applicable authorities. This Court remains convinced that the adverse interests of counsel, combined with the failure to disclose those adverse interests, makes Akin, Gump's continued representation of the Debtors unacceptable. This Court further holds that the due process rights guaran-

teed to counsel under the Fifth Amendment were not denied by this Court.

## I. FAILURE OF COUNSEL TO MEET REQUIREMENTS OF THE BANKRUPTCY CODE FOR EMPLOYMENT OF PROFESSIONAL PERSONS JUSTIFIES DISQUALIFICATION.

### A. Failure to Disclose

The previous Opinion adequately noted the factual inadequacies of Akin, Gump's disclosure. Therefore, recitation of these issues is not necessary. However, it is perhaps appropriate to review the legal issues related to disclosure.

Courts have consistently construed Rule 2014, which implements 11 U.S.C. § 327, as requiring maximum disclosure of any "connection" which may cause divided loyalty:

> It is the duty of the attorney to reveal all connections. Rule 215 [superceded by the substantially unmodified Rule 2014] does not give the attorney the right to withhold certain information on the grounds that, in the attorney's opinion, the connection is of no consequence or is not adverse. (Citation ommitted). If the duty to properly disclose is neglected, however innocently, the attorney performs services at his peril.

*In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). The antecedents for this broad standard of disclosure of a putative counsel's relationship with parties in interest are longstanding. *See, e.g., In re Futuronics Corp.*, 655 F.2d 463, 468–69 (2nd Cir.1981).

■ Akin, Gump does not challenge these pronouncements, instead they plead ignorance. In an affidavit filed with this Court, counsel claimed:

> When I filed the applications, I understood that the reference contained in the form pleading regarding Akin, Gump's "connections to creditors or any other party in interest" to refer to business affiliations. I was not aware of case law

interpreting the disclosure requirement of Bankruptcy Rule 2014 more broadly. I do not recall that any other attorney in the firm reviewed the application before they were filed.

Declaration of Marvin R. Mohney, page 2. Unfortunately, the burdens of the Bankruptcy Code are not met by a white heart. Negligence does not excuse the failure to disclose a possible conflict of interests. *In re Coastal Equities*, 39 B.R. at 308.

■ This Court will not venture to guess whether this Opinion would be markedly different had Akin, Gump made full and timely disclosure. However, it is this Court's general view that in the majority of cases where appropriate disclosure is made, some potential representation problems can be resolved.

### B. Adverse Interests of Akin, Gump

The failure to disclose is an important aspect of this Court's holding. But even disclosure does not vitiate the actual, present, and irreconcilable conflicts of interest present in this case. On the facts as presented in this case, the adverse interests of Akin, Gump caused problems well beyond the mere failure to disclose.

■ Section 327 requires application of a two prong test for employment of professional persons. That section provides that the debtor-in-possession may, with court approval, employ one or more attorneys (i) that do not hold or represent an interest adverse to the estate; and (ii) that are disinterested persons. Both prongs of this test must be met. *See, e.g., In re Leisure Dynamics, Inc.*, 33 B.R. 121 (Bankr.D. Minn.1983). Akin, Gump has failed on both counts.

### i) Adverse interests

■ This Court has no desire to recanvass the numerous adverse interests held by Akin, Gump in this case.[1] Adequate coverage of these issues is presented in the original Opinion. However, three conflicts are of particular prominence:

1. See original Opinion.

1. In the previous Opinion, this Court found that Akin, Gump received a payment of $340,000 for past legal services on the eve of bankruptcy. At the same time, checks issued to other creditors of the Debtors were being returned marked "NSF." Therefore, Akin, Gump held an adverse interest as a recipient of a likely preferential transfer.

2. In the previous Opinion, this Court found that the various Debtors held substantial intercorporate obligations. These obligation were of a type and size as to make the holders adverse. Akin, Gump therefore was representing debtors with separate and adverse interests. Effectively, counsel was representing both creditors and debtors in the same case.

3. Akin, Gump also represented equity holders.

These are certainly not the only problems with Akin, Gump's continued representation, but they stand out. Cumulatively, the above conflicts, along with those detailed in the previous Opinion, combined with a failure to disclose, convinces this Court that the various Debtors could be better served by representation by different counsel.

### ii) Akin, Gump is not Disinterested

On the Code requirement of disinterestedness, the Fifth Circuit could hardly have spoken more clearly. Quoting Collier on Bankruptcy § 327.03, this Circuit has held that the requirement of disinterestedness:

appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code ... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration ...

*In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256 (5th Cir.1986). If this were not clear enough, the Court went on to quote a Pennsylvania court which held:

[P]rofessionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.

*Id., quoting, In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 334 (E.D.Pa.1982).

■ With these pronouncements in mind, Akin, Gump's failure to meet the standard becomes clearly outlined. Added to the fact that counsel held a possible preference and represented creditors of the estate, counsel was an "insider" of the Debtor by virtue of the fact that a member of Akin, Gump was on the board of directors of the Debtors' parent corporation. This is an obvious case of lack of disinterestedness.

■ Examination of the affidavits prepared in support of Motion for Rehearing suggest that the error may perhaps have been inadvertent.[2] However, this isn't the point. Negligent failure to discover a conflict does not remove the conflict. *See, In re Coastal Equities,* 39 B.R. at 308.

■ Akin, Gump seems to suggest that rather than an actual conflict in this case, there are only potential conflicts. As an example, counsel suggests that since there had been no determination of Debtor insolvency, it was not yet established that counsel had received a preference. *See,* 11 U.S.C. § 547 (1979). The argument continues to suggest that the Court should not involve itself until the conflict becomes "actual." This is a faulty argument which assumes the conclusion. The "actuality" of the conflict is not per se that counsel might hold a preference, rather it is that counsel will be tempted to neglect its duties

---

**2.** In affidavits submitted pursuant to this motion for rehearing, counsel claims, "[t]he first time any potential conflict of interest was brought to my attention was at a hearing a week or so after the petitions had been filed wherein

Judge Abramson asked me if the firm had a conflict of interest in representing a parent and subsidiary." Declaration of Michelle W. LaBorde, page 2.

to the estate by being less than zealous in its investigation of the preference.

■ Counsel for the Debtor must look to all sources for recovery by the estate. *In re McKinney Ranch*, 62 B.R. 249, 254 (Bankr.C.D.Cal.1986). Unavoidably, this means investigation of preferences. This Court does not accept the proposition that in real life counsel for the Debtor may be expected to actively pursue investigations into matters which might directly result in their own liability to the estate.

■ To further erode the attempted distinction between actual and potential conflicts, the Court must address timing problems. That is, what is the Court to do when a "potential" conflict becomes "actual?" If such conflict arises near the conclusion of the case, the Court would face several unattractive options; appointment of a trustee with the associated expense, removal of counsel for the Debtor with possible implications on the opportunity to reorganize, or continuation of the case with a conflict. For these reasons, this Court is skeptical that there can be a mere "potential" conflict in a bankruptcy situation. Even a possibility of conflict may warrant disqualification. *In re Roger J. Au & Son, Inc.*, 64 B.R. 600, 606 (N.D.Ohio 1986). Likewise, if there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification. *In re Johore Investment Company*, 49 B.R. 710, 713 (Bankr.D.Hawaii 1985).

■ Disqualification of counsel in this case is further supported by the ABA Code of Professional Responsibility, which governs attorney conduct in federal courts. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979). The Code of Professional Responsibility requires that an attorney avoid even the appearance of impropriety. ABA Code of Prof. Resp., Canon 9. In the bankruptcy context, this rule requires not only that counsel for the debtor be actually disinterested, but that its relationship be above suspicion. *See, e.g., In re Roberts*, 46 B.R. 815, 838 (Bankr.D.Utah 1985).

■ It is the Court's obligation to police itself and those who practice before it to preserve integrity and public confidence in the bankruptcy process. *In re Anver Corp.*, 44 B.R. 615, 617 (Bankr.Mass.1984). Elimination of duality of representation encompassing possible conflicts of interest on behalf of the debtor is essential if public confidence in the bankruptcy process is to be cultured. *Roger J. Au*, 64 B.R. at 606.

## II. ATTEMPTS BY AKIN, GUMP TO CURE THE DEFAULTS

Akin, Gump contends that various remedial measures taken *post disqualification* cure their conflict problems. After due consideration of these claims, as well as an exhaustive examination of the relevant materials, this Court disagrees.

■ As noted in the original Opinion, Akin, Gump was an insider of the Debtors by virtue of the fact that a member of Akin, Gump was on the board of directors of a parent corporation of the Debtors. Counsel claims that the partner's resignation from this position resolves this conflict. This position has not found favor with other courts, nor does it with this one. *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 165 (Bankr.D.Ariz.1984).

■ Akin, Gump has also claimed that it is not a pre-petition creditor of the Debtor. On the other hand, they claim that they are not the holder of a substantial preference. In the facts of this case, counsel must be one or the other. As previously discussed, Akin, Gump accepted a large payment for pre-petition for legal services on the eve of bankruptcy at a time when other creditors of the estates were having their checks returned marked "NSF." As was succintly stated by a Utah court:

the conflict of interest would not be eliminated if the law firm obtained from the client a pre-petition payment of these fees and costs because such a payment would likely constitute a preference that may be avoided for the benefit of other creditors, thus involving the law firm in a conflict of interest as the holder of an interest adverse to the estate in violation of Section 327(a).

*In re Roberts,* 46 B.R. 815, 849 (Bankr.D. Utah 1985). Therefore, Akin, Gump, by its actions, has made itself either a creditor of the estate or the holder of a substantial preference. Counsel has offered to waive any preference recovery filed or adversely decided against them. This is an unacceptable cure since it is it which would be investigating the preference and bringing suit to thereon.

█ Finally, counsel claims that it has neither "knowingly" misrepresented its status nor has it employed artifice or concealment to disguise its status. While there is room to doubt this, it is not really the point. Negligence does not excuse actual conflict. *In re Coastal,* 39 B.R. at 308.

### III.  THE DUE PROCESS CLAIM

█ Counsel suggests that its due process rights to adequate notice and opportunity for hearing have been deprived by this Court. The due process clause requires notice reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. *North Alabama Express, Inc. v. United States,* 585 F.2d 783, 786 (5th Cir.1978). Due process is a flexible standard which calls only for procedural protections necessitated by a particular situation. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Due process does not require notice of all possible ramifications of a hearing. *See, In re Petro,* 18 B.R. 566, 569 (Bankr.E.D. Pa.1982). It is this Court's holding that counsel received adequate notice and has received more than adequate hearing.

█ Counsel suggests that since the Court's Order to Show Cause "why they should not be disqualified from representing certain of the debtors" was not adequate notice since the Court eventually disqualified counsel from representing all Debtors. This Court has no desire to play word games with counsel. This Court believes that the term "certain" does not necessarily exclude "all." Further, since no particular Debtor was specified, counsel should have been prepared on all of the Debtors.

█ Moreover, whatever the original merit of this argument at the commencement of the Show Cause hearing, it has been superseded by Akin, Gump's and Debtors' interjecting these issues at the hearing. Akin, Gump never objected to the interposition of any of the issues raised in the Committee's Objections to Continued Representation by Akin, Gump; rather, it was Akin, Gump and Debtors which presented testimony at and prior to the hearing regarding their receipt of fees, Mr. Feld's service as a director on a parent corporation of the Debtor, and the amount of inter-company debt.

█ Moreover, and perhaps more importantly, even if the original notice were somehow deficient, it was cured by this Court's invitation to submit additional briefs and affidavits. *See, Leake v. Chandler,* 54 B.R. 942, 947 (Bankr.W.D.Va. 1985). Counsel for the various parties in this proceeding accepted this invitation and all have submitted supplemental, lengthy and detailed briefs on the issues presented in this proceeding. These briefs have been considered by this Court in minute detail.

### CONCLUSION

The Court's holding is that under the facts as presented to this Court, the various Debtors in this case are better served by alternative counsel. The motion for rehearing is therefore DENIED.