[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15212

_____

D. C. Docket Nos.
05-00248-CV-ORL-19-DAB
03-04926-BKC-JA

In re:  BRUCE LEE JENNINGS,

Debtor.

_____

QUARLES AND BRADY LLP,

Plaintiff-Appellant,

versus

BRANDON JAMES MAXFIELD,
UNITED STATES TRUSTEE,
Felicia S. Turner,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 4, 2006)**

Before MARCUS, WILSON and COX, Circuit Judges.

PER CURIAM:

Appellant law firm Quarles and Brady, LLP ("Q&B") appeals the district court's affirmance of the bankruptcy court's determination that (1) Q&B violated Bankruptcy Rule 2014's disclosure requirements by failing to include the numerous connections between its many clients in its application for employment and an accompanying affidavit, and (2) Q&B was encumbered by several "potential" conflicts of interest and at least one "actual" conflict. Based on these findings, the bankruptcy court disqualified Q&B from representing the eleven debtors in the underlying consolidated bankruptcy proceeding, denied Q&B's request for fees, and required Q&B to disgorge any pre-petition retainer.

Specifically, Q&B argues that even though it failed to include all of its connections within its Rule 2014 application and affidavit, the connections were actually disclosed to the bankruptcy court in other filings and pleadings. What's more, Q&B contends that it had only "potential" conflicts of interest, and that these conflicts did not result in any harm to its clients. After thorough review, we affirm.[1]

_____

[1] Whether or not a disqualification order standing alone is appealable, we are satisfied that this case is appealable because it also involved a final order directing Q&B to disgorge any pre-petition retainer fees and finally denied Q&B's request for additional fees. See In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) ("In bankruptcy proceedings, it is generally the

2

We review the district court's factual findings for clear error and its legal conclusions de novo. Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 359 (11th Cir. 1994). The district court's decision not to award attorneys fees will be reversed only for an abuse of discretion. Id. "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." Id. (quoting Hatcher v. Miller (In re Red Carpet Corp. of Panama City Beach), 902 F.2d 883, 890 (11th Cir. 1990)). Similarly, "a bankruptcy judge's discretion in awarding compensation for services performed during bankruptcy proceedings deserves great deference," id., and will be upheld absent an abuse of discretion, Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1401 (11th Cir. 1997).

The essential facts and procedural history are clear. Eleven related debtors filed for reorganization under Chapter 11 of the Bankruptcy Code in Jacksonville,

---

particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation. . . . [Thus, to be appealable,] the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do."); Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1548 (11th Cir. 1996) ("Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed. . . . [F]inality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole. [A]ny order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable.") (quoting In re Martin Bros. Tool Makers, Inc., 796 F.2d 1435, 1437(1986)).

Florida, on May 14, 2003, and the cases were consolidated for administrative purposes. The debtors submitted a single application to the bankruptcy court to employ attorneys Q&B, and Q&B submitted an affidavit purporting to reveal all of its connections to the debtors pursuant to Rule 2014. Rule 2014 plainly states that, where a debtor submits an application for employment of a law firm, the burden of disclosing all connections between the law firm seeking employment and any debtors lies squarely with the client and the law firm in its verified statement.[2] Based on the debtors' application and Q&B's affidavit, the bankruptcy court approved Q&B's employment.

---

[2]Rule 2014 of the Federal Rules of Bankruptcy Procedure states, in pertinent part:

> (a) Application for an order of employment
>
> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee [or debtor in possession] . . . . The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

After Q&B filed its initial application seeking interim compensation, Brandon James Maxfield, a creditor, moved to disqualify Q&B, alleging that Q&B violated Rule 2014 and had several actual and potential conflicts of interest. After two extensive hearings on the motion, the bankruptcy court granted Maxfield's motion, finding that Q&B violated Rule 2014 by failing to disclose fully the connections between the firm and its eleven debtor clients and that the firm had at least one actual and two potential conflicts of interests.

As for the issue of disclosure, the bankruptcy court squarely rejected Q&B's contention that it was required to peruse the entire record to learn the relevant facts, insisting that the relevant disclosures must appear in the application and accompanying affidavit filed pursuant to Rule 2014. The district court affirmed, and we agree. Bankruptcy courts are not obliged to hunt around and ferret through thousands of pages in search of the basic disclosures required by Rule 2014. E.g., Kravit, Gass & Weber, S.C., v. Michel (In re Crivello), 134 F.3d 831, 839 (7th Cir. 1998) ("Bankruptcy courts have neither the resources nor the time to . . . root out the existence of undisclosed conflicts of interest."); In re EWC, Inc., 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) (courts have no obligation to "seek out conflicts of interest not disclosed" by debtors and professionals); In re Marine Outlet, Inc., 135 B.R. 154, 156 (Bankr. M.D. Fla. 1991) ("There is no duty placed on the United

States Trustee or on creditors to search the record . . . ."); In re BH & P, Inc., 119 B.R. 35, 44 (Bankr. D.N.J. 1990) ("It is not . . . the obligation of the bankruptcy court to search the record for possible conflicts of interest.").

Plainly, Rule 2014 requires a law firm to disclose all of its relevant connections in its verified statement so that a court may readily review the appointment for conflicts. I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.), 432 F.3d 347, 355 (5th Cir. 2005) ("'[C]ase law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises.'"); In re Keller Fin. Servs. of Fla., Inc., 243 B.R. 806, 812 (Bankr. M.D. Fla. 1999) ("The professional must disclose all facts that bear on his disinterestedness, and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness and which do not." ); In re Gulf Coast Orthopedic Ctr., 265 B.R. 318, 323 (Bankr. M.D. Fla. 2001) ("Under the Rule the applicant and the professional must disclose all connections, not merely those which rise to the level of conflict."); In re EWC, 138 B.R. at 280 (noting that debtors and professionals "cannot pick and choose which connections are irrelevant or trivial"); In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) ("The existence of an arguable conflict must be disclosed if only to

6

be explained away."); In re Mich. Gen. Corp, 78 B.R. 479, 482 (Bankr. N.D. Tex. 1987) ("[The predecessor to Rule 2014] does not give the attorney the right to withhold certain information on the grounds that, in the attorney's opinion, the connection is of no consequence or is not adverse.").

As for conflicts of interest, the bankruptcy court identified one actual and two potential conflicts. The trial court determined that the actual conflict arose where one debtor depleted its assets despite another debtor's secured claim against those assets. The court determined that this forced Q&B to advance "two diametrically opposed goals" and thus "created an actual dispute." The court also found potential conflicts when one debtor wiped from its financial statements and tax return a $500,000 loan given to another debtor without any money changing hands, and where real estate transactions between two debtors may have produced an administrative claim in the case. The district court affirmed, explaining that these conflicts "prejudiced the bankruptcy estates that the law firm represented and deprived each of unbiased, independent assessments of the available and outstanding claims." Again, we agree. See In re Prince, 40 F.3d at 361 (finding a conflict of interest where counsel "was in the unfortunate position of having to serve too many masters"); id. at 360 n.1 ("[I]nability to independently evaluate claims for its client . . . is the actual prejudice to the Debtor . . . .").

Having made these determinations, the bankruptcy court was well within its discretion to (1) conclude that "[Q&B]'s initial and continuing violation of the disclosure rules coupled with its non-disinterestedness warrants its disqualification in all of these related cases," (2) deny Q&B all compensation, and (3) order the firm to disgorge any pre-petition retainer. See In re Prince, 40 F.3d at 361 (holding that, where a conflict of interests exists, counsel "should be denied compensation. It is no answer to say that fraud or unfairness were [sic] not shown to have resulted." (alteration in original) (quoting Woods v. City Nat'l Bank & Tr. Co., 312 U.S. 262, 268 (1941))).

In short, we affirm based on the bankruptcy court's findings of fact and conclusions of law, and the thorough opinion of the district court.

AFFIRMED.